UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KOMAA MNYOFU,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF EDUCATION OF RICH TOWNSHIP HIGH SCHOOL DISTRICT 227; ANTOINE BASS,<br><br>Defendants. | No. 15 C 8884<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Komaa Mnyofu alleges that the Board of Education of Rich Township High School District 227, and its president, Antoine Bass, violated Mnyofu's First Amendment rights by preventing him from criticizing school officials during Board meetings. Mnyofu alleges that Defendants acted in accordance with a Board policy prohibiting such criticism, which is expressed verbally prior to the public comment portion of board meetings, *see* R. 24 at 3, and in writing on board meeting agendas. *See* R. 24-4 at 3 ("Please refrain from mentioning the name of students and employees."). Mnyofu has moved for a preliminary injunction, R. 7, and Defendants have moved to dismiss Mnyofu's claims. R. 21.

Mnyofu submitted with his motion for a preliminary injunction an audio-visual recording of the board meeting at which he alleges Defendants violated his First Amendment rights. The recording shows that Mnyofu began speaking at time 2:06:51. About two minutes and 44 second later, at time 2:09:35, Mnyofu began to

criticize certain individuals by name. At that point, Board President Bass asked for the microphone to be turned off, for the security guard to stop Mnyofu from speaking, and for the police to be called. Mnyofu continued to speak for about another three minutes, until time 2:12:31, at which point he left the meeting.

**A.     Motion to Dismiss**

By alleging that that the Board's policy prohibits criticism of school officials, Mnyofu has alleged that the Board intends to prohibit speech based on its content. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015) ("Government regulation of speech is content based if a law applies to a particular speech because of the topic discussed or the idea or message expressed."); *see also Surita v. Hyde*, 665 F.3d 860, 877 (7th Cir. 2011) (government regulation that specifically targets a certain "viewpoint" is "an egregious form of content discrimination" (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995))). Moreover, the "right to criticize public officials is . . . protected by the First Amendment." *Jefferson v. Ambroz*, 90 F.3d 1291, 1298 (7th Cir. 1996). Such "content-based" restrictions on speech in "designated public forums" are "subject to strict scrutiny, meaning that the government must show the exclusion is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Surita*, 665 F.3d at 870. Mnyofu alleges that the Board meeting is a "designated public forum," R. 1 ¶ 4, and that "[t]here is no compelling reason or legitimate government interest of any kind in prohibiting criticism of public officials at public meetings while allowing favorable comments about public officials." *Id.* ¶ 26. Whether viewed as a content-

2

based restriction, a viewpoint restriction, or a restriction of the right to criticize public officials, Mnyofu's allegations are sufficient to plausibly allege that Defendants violated his First Amendment rights.

In support of their motion to dismiss, Defendants contend that they did not violate Mnyofu's First Amendment rights because their attempt to stop him from speaking was unsuccessful. Defendants point out that Mnyofu actually spoke at the board meeting for about five minutes and 40 seconds, which is more than the four minutes each member of the public is permitted to address the Board at its meetings. Defendants argue that "the mere attempt to deprive a person of this First Amendment Rights is not . . . actionable under Section 1983." R. 22 at 6. Defendants also contend that Mnyofu "was not forcibly removed after he refused to stop speaking about school officials," but "was only removed following his refusal to sit down after his allotted time was up and only after he became excessively disruptive to the Board meeting." *Id.* at 7.[1]

---

[1] In making these arguments, Defendants reference the recording that Mnyofu submitted with his motion for a preliminary injunction. This recording is evidence that is not normally considered on a motion to dismiss pursuant to Rule 12(b)(6). *See Craig v. Rich Tp. High Sch. Dist. 227*, 736 F.3d 1110, 1113 n.1 (7th Cir. 2013). However, the Seventh Circuit has considered video evidence that "contradicts the allegations in the complaint" when the video was attached to the complaint as an exhibit. *See Bogie v. Rosenberg*, 705 F.3d 603, 608-12 (7th Cir. 2013). Furthermore, Defendants' argument addresses only the length of time that Mnyofu actually spoke at the meeting. The Court takes judicial notice of the timestamps on the recording because they are undisputed facts which "can be accurately and readily determined from [a] source[] whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). For these reasons, the Court finds it proper to consider the recording for the limited purpose of addressing Defendants' argument on their motion to dismiss.

This argument, however, ignores that fact Mnyofu has alleged, and the recording shows, that Board President Bass ordered the microphone turned off and the security guard to step in immediately after Mnyofu began criticizing certain individuals by name, prior to the four minute mark. In short, Defendants arguments that they (1) did not infringe upon Mnyofu's First Amendment rights, and (2) only cut short his speech in accordance with a time limit that Mnyofu does not challenge in his lawsuit, are refuted by Mnyofu's allegations and what is shown on the recording.

In further support of their motion to dismiss, Defendants incorporate by reference an argument they more fully develop in their opposition to Mnyofu's motion for a preliminary injunction. *See* R. 22 at 10. Defendants argue that the Board meeting is a "limited public form" and that they are permitted to channel complaints "regarding individual personnel" into a "uniform grievance procedure." R. 24 at 9 (citing *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 760 (5th Cir. 2010) ("The Board has a legitimate interest, if not a state-law duty, to protect student and teacher privacy and to avoid naming or shaming as potential frustration of its conduct of business.")). This argument raises questions of fact regarding the status of the Board meeting under the First Amendment and whether the individuals Mnyofu criticized are public officials for purposes of the First Amendment. These are questions that the Court cannot settle on the basis of Mnyofu's allegations and the recording alone. *See Ovadal v. City of Madison*, 416 F.3d 531, 538 (7th Cir. 2005) (whether a government restriction on speech "is

4

capable of content-neutral application" is a "[m]atter[] of material fact"); *see also Galena v. Leone*, 638 F.3d 186, 203 (3d Cir. 2011) (whether "the challenged restriction [is] (1) content-neutral, (2) narrowly tailored to serve an important governmental interest, and (3) leave[s] open ample alternatives for communication of information . . . . are questions of fact"); *Boardley v. U.S. Dep't of Interior*, 615 F.3d 508, 515 (D.C. Cir. 2010) ("[M]any national parks undoubtedly include areas that meet the definition of traditional public forums. This is a fact-intensive question which cannot be answered in the absence of evidentiary submissions."). The Court cannot dismiss Mnyofu's claims on this basis.

Finally, Defendants also argue that Board President Bass has qualified immunity in his individual capacity because the public's right to "criticiz[e] a government employee by name has not been litigated in Illinois" and is not clearly established. R. 22 at 10. The "right to criticize public officials" is clearly established. *See Jefferson*, 90 F.3d at 1298. Additionally, the right to speak at public forums or designated public forums free of content-based restrictions is also clearly established. *See Surita*, 665 F.3d at 869-70 (in a designated public forum, the government "may enforce reasonable time, place, and manner restrictions provided they are *content neutral*") (emphasis added). And Mnyofu has plausibly alleged that Board meeting was a designated public forum. *See id.* at 869-70 ("There is no doubt that audience time during Waukegan city council meetings constituted a designated public forum.") (citing cases). As discussed, to the extent that Defendants argue that their restriction of Mnyofu's speech was based on his disruptive demeanor (i.e., the

*manner* in which he presented his speech), or that the Board meeting was not a designated public forum, these arguments raise fact issues which cannot be determined from viewing the recording alone. Mnyofu's allegations and what the Court can glean from the recording make it plausible that Defendants restricted the content of Mnyofu's speech about public officials in a designated public forum. Such conduct violates clearly established rights. Thus, the Court cannot hold that Board President Bass is immune at this point in the proceedings.[2]

**B.  Motion for Preliminary Injunction**

Mnyofu's allegations, along with the recording attached to his motion, are also sufficient to demonstrate that Mnyofu has a reasonable likelihood of success on the merits because "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Joelner v. Village of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004). Additionally, "there can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute because it is always in the public interest to protect First Amendment liberties." *Id.* Thus, the factors relevant to the grant of a preliminary injunction—the plaintiff's likelihood of success on the merits, and whether the plaintiff will suffer irreparable harm that outweighs any harm to the defendant—are in Mnyofu's favor.

In opposition to Mnyofu's motion, Defendants argue that Mnyofu "cannot demonstrate that he will suffer irreparable harm because the Board has ceased [its

---

[2] Mnyofu does not object to the dismissal of Board President Bass in his official capacity. *See* R. 26 at 6.

6

policy]." R. 24 at 5. But as Defendants also point out, "voluntary cessation of allegedly illegal conduct does not deprive the [court] of power to hear and determine the case, i.e., does not make the case moot." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953).

Defendants also argue, however, that "voluntary cessation of allegedly illegal conduct" will moot injunctive relief (preliminary or otherwise) if "there is no reasonable expectation that the wrong will be repeated." R. 24 at 6 (quoting *W.T. Grant*, 345 U.S. at 632-33). Defendants, however, "bear[] the formidable burden of showing that it is absolutely clear that allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000); *see also Nelson v. Miller*, 570 F .3d 868, 882 (7th Cir. 2009). That burden "is increased by the fact that the voluntary cessation only appears to have occurred in response to the present litigation." *Northland Family Planning Clinc, Inc. v. Cox*, 487 F.3d 323, 342-43 (6th Cir. 2007); *see also Ragsdale v. Turnock,* 841 F.2d 1358, 1366 (7th Cir. 1988) ("We share the district court's concern that the State's position on this provision is asserted only in this litigation."). Moreover, Defendants continue to argue that they are permitted to prevent Mnyofu from criticizing school employees. *See* R. 22 at 6 n.2 ("Defendants do not admit that any action they took was an attempt to deprive Mnyofu of his First Amendment rights."); R. 28 at 1 n.1 ("The Board at no time prohibited the criticism of school officials or public officials. The Board had prohibited criticizing school *employees* by name.") (emphasis in original); R. 24 at 8 ("The Board's

7

restriction on criticizing district employees by name did not violate Mr. Mnyofu's First Amendment rights."). These arguments show that despite the fact that Defendants removed the offending policy statement from their February 5, 2016 meeting agenda, *see* R. 24 at 3-4, they still believe that the First Amendment permits them to reinstate the policy in the future. Thus, a live dispute remains that can be remedied by injunctive relief.

Defendants also argue that Mnyofu is not likely to succeed on the merits, because the Board's meetings constitute a "limited public forum" in which restrictions on speech face a lower level of scrutiny than the strict scrutiny applicable to a "designated public forum." *See* R. 24 at 8. Defendants argue further that regardless of whether the Board meetings are "limited" or "designated" public forums Defendants are permitted to restrict speech to ensure that "their meetings are conducted with relative orderliness and fairness to all." *Id.* But as discussed, Mnyofu's allegation and the evidence on the recording establish a reasonable likelihood that the Board meetings are designated public forums and Defendants restriction of Mnyofu's speech was content-based. Any final determination of these questions requires addressing facts regarding the circumstances of the meetings, which are questions that cannot be settled based on Mnyofu's allegations and the recording alone. *See Ovadal*, 416 F.3d at 538; *see also Galena v. Leone*, 638 F.3d at 203; *Boardley*, 615 F.3d at 515. Since there is a reasonable likelihood that Mnyofu can show that Defendants' policy will not withstand scrutiny under the First Amendent, his motion for a preliminary injunction is granted.

**Conclusion**

For the foregoing reasons, Mnyofu's motion for a preliminary injunction, R. 7, is granted, and Defendants' motion to dismiss, R. 21, is denied.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: April 5, 2016